**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**HUNTINGTON DIVISION**

**STEPHEN S. DREW, individually and on**
**behalf of a proposed class**

<strong>Plaintiff</strong>

<strong>CASE NO. 3:12:-cv-9022</strong>

    **v.**

**ENERGY FUTURE HOLDINGS CORPORATION,**
**and LUMINANT MINING COMPANY, LLC,**

<strong>Defendants.</strong>

**<u>DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO
DISMISS FOR LACK OF JURISDICTION OR, IN THE ALTERNATIVE,
MOTION TO TRANSFER VENUE OR, IN THE ALTERNATIVE,
MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM</u>**

Pursuant to Local Rule 7.1, Defendants Energy Future Holdings Corp. ("EFH") and Luminant Mining Company, LLC ("Luminant") (collectively, "Defendants") respectfully submit this Memorandum of Law in Support of their Motion to Dismiss as follows:

<strong>I.    <u>SUMMARY OF MOTION</u></strong>

This Court has no jurisdiction over Defendants, both of which are Texas corporations with no offices, employees, operations or any other business presence in West Virginia. Defendants have not engaged in any business activities—generally or specifically related to Plaintiff Stephen S. Drew's ("Drew") claims—that establish they have purposefully availed themselves of the benefit of conducting business in West Virginia. Quite the contrary, virtually all of the actions that Defendants took with respect to Drew's prospective employment occurred in Texas and were initiated by Drew for the purpose of securing employment in Texas. Because neither Defendant has had constitutionally sufficient minimum contacts with West Virginia such that allowing the suit to proceed against them would not offend traditional notions of fair play

and substantial justice, the claims against them should be dismissed.

In the first alternative, Defendants seek transfer of venue to the Northern District of Texas, Dallas Division, because it is in the interest of justice. The acts about which Drew complains occurred in Texas, where all the relevant documentary evidence is maintained and all of the relevant witnesses reside. These witnesses are critical to the adjudication of this case, and there will be substantial hardship and inconvenience if this matter is not transferred. Given Drew's connection to Texas and willingness to relocate here for employment with Luminant, which forms the basis of this action, any prejudice associated with transfer is minimal, at best.

In the second alternative, the Complaint should be dismissed because the information on which Drew alleges Defendants relied in rescinding his offer was a Sentencing Order provided by the Rosebud County Sheriff's Office in Montana, which is a law enforcement entity and not a "consumer reporting agency" required to assert a Fair Credit Reporting Act ("FCRA") claim. Moreover, Drew has not stated a claim for a "willful" violation of the FCRA because Drew's bald assertions that Defendants acted "in deliberate or reckless disregard" for the FCRA and that regulatory guidance is generally available are entirely insufficient as a matter of law.

## II.     FACTUAL BACKGROUND

EFH is a Dallas, Texas-based energy company that maintains a portfolio of competitive and regulated energy companies in Texas. (Fleshman Aff. ¶ 3.) Luminant, a wholly-owned subsidiary of EFH, is the largest coal-mining operation in the state of Texas, and its operations supply a portion of the fuel for affiliated coal-fueled generation plants in Texas. (*Id.*)

Drew first sought employment with Luminant in September 2010 by submitting an application on EFH's website. (Jacobsen Aff. ¶ 3, Ex. A.) In his application, Drew listed a Dallas, Texas mailing address, telephone number, and email address. (*Id.*)

Drew re-applied for employment with Luminant in January 2012, again by submitting an application on EFH's website. (Am. Compl. ¶ 15; Jacobsen Aff. ¶ 5, Ex. B.) Neither EFH nor Luminant solicited Drew's application for employment; rather, on his application, Drew stated that the referral source for his application was a posting on the EFH website, which is maintained by EFH in Dallas, Texas. (Jacobsen Aff. ¶¶ 5-8, Ex. B.) On his resume, Drew indicated that he had a Texas drivers' license and that he was willing to relocate to Texas. (*Id.*) Before inviting Drew for an onsite interview, Eugene Holub, the hiring manager at Three Oaks Mine in Elgin, Texas, conducted a telephone screening of Drew from Texas. (Am. Compl. ¶ 16; Lewis Aff. ¶ 3.)

On February 10, 2012, Drew participated in an in-person interview with Holub at Luminant's Three Oaks Mine in Texas. (Lewis Aff. at ¶ 4.)

On February 27, 2012, Luminant extended and Drew accepted an offer of employment, which was contingent upon his successful completion of a background check, drug screen and reference check. (Jacobsen Aff. ¶ 11, Ex. C; Lewis Aff. ¶ 5.) By accepting Luminant's conditional offer of employment, Drew agreed to relocate to Texas. (Jacobsen Aff. ¶ 11, Ex. C.)

A licensed investigator in the EFH Corporate Security group, Cheryl Anderson, ran an initial background search on Drew through PublicData.com.[1] (Floyd Aff. ¶ 4.) Anderson works in EFH's offices in Dallas, Texas, and she performed the search in Dallas. (*Id.*)  Because the initial background search showed that Stephen S. Drew had a prior conviction for sexual assault in Rosebud County, Montana, Maurice Floyd, another investigator in the EFH Corporate Security group, contacted the Rosebud County Sheriff's Department to obtain a copy of the Sentencing Order. (*Id.* at ¶ 5, Ex. A.)

On April 5, 2012, Darrell Jacobsen, a Recruiting Manager for Luminant, notified Drew

---

[1] PublicData.com is a Texas corporation headquartered in Irving, Texas, which maintains a web-based database of public records obtained from government agencies. (Bedell Aff. ¶ 3, Ex. A.)

that Luminant was rescinding Drew's offer of employment based on the fact and nature of Drew's conviction, as reflected in the Sentencing Order provided by the Rosebud Sheriff's Department. (Jacobsen Aff. ¶ 14.) Jacobsen also works in Dallas, Texas, and he called Drew from his office to inform him of Luminant's decision. (*Id.*)

On December 14, 2012, Drew filed suit against Defendants alleging that they obtained consumer reports for his prospective employment and relied on information in those reports to deny him employment in violation of the FCRA. (Am. Compl. ¶¶ 1-2.)

## III.   LEGAL ARGUMENTS AND AUTHORITIES

### A.   Drew's Claims Should Be Dismissed Because West Virginia Lacks Personal Jurisdiction Over the EFH Defendants.

Federal Rule of Civil Procedure 12(b)(2) allows a defendant to move to dismiss claims against it for lack of personal jurisdiction. "When a court's personal jurisdiction is properly challenged by a Rule 12(b)(2) motion, the jurisdictional question thus raised is one for the judge, with the burden on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of the evidence." *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). When the court addresses a jurisdictional challenge based only on motion papers, "the plaintiff is simply to make a prima facie showing of a sufficient jurisdictional basis," and "the court must construe all relevant pleading allegations in the light most favorable to the plaintiff." *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). But when affidavits are submitted, as here, "the allegations of the complaint, except insofar as controverted by defendant's affidavit, must be taken as true." *Wolf v. Richmond Hosp. Auth.*, 745 F.2d 904, 908 (4th Cir. 1984) (emphasis added).

For a "district court to assert personal jurisdiction over a nonresident defendant, two conditions must be satisfied: (1) the exercise of jurisdiction must be authorized under the state's long-arm statute; and (2) the exercise of jurisdiction must comport with the due process

requirements of the Fourteenth Amendment." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003). Because the West Virginia long-arm statute is coextensive with due process, the "statutory inquiry [] merges with the Constitutional inquiry." *In re Celotex Corp.*, 124 F.3d 619, 927-28 (4th Cir. 1997). "To satisfy constitutional due process, the defendant must have sufficient minimum contacts with West Virginia so that requiring it to defend its interests here would not 'offend traditional notions of fair play and substantial justice.'" *Vass v. Volvo Trucks N. Am., Inc.*, 304 F. Supp. 2d 851, 854 (S.D.W. Va. 2004).

Jurisdiction over a nonresident defendant may be either general or specific. To establish general jurisdiction, "the plaintiff must show that the corporation's activities in the state are 'continuous and systematic,' which is a more demanding standard that is necessary for establishing 'specific jurisdiction.'" *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 276 n.3 (4th Cir. 2009). "If the defendant's contacts with the State are also the basis for the suit, those contacts may establish specific jurisdiction." *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002).

**1.    The exercise of general personal jurisdiction over Defendants would be unconstitutional.**

Defendants have not had the requisite continuous and systematic general business contacts with West Virginia to support general jurisdiction. (Fleshman Aff. ¶¶ 4-7.) The only allegation in the Complaint that even attempts to meets this standard is Drew's vague claim that "Defendants hire from a pool from applicants around the nation" and that their application and background check processes are likewise conducted nationwide. (Am. Compl. ¶ 8.) These allegations fall far short the rigorous general jurisdiction standard for several reasons.

First, the alleged facts regarding Defendants' application and background check processes are controverted by affidavits, which establish that Defendants perform background

checks in Dallas, Texas (Floyd Aff. ¶¶ 4-5; Jacobsen Aff. ¶ 9); receive and evaluate employment applications in Dallas, Texas (Jacobsen Aff. ¶ 9); and interview candidates at their prospective places of employment, all of which are located either in Texas or in Washington, D.C. (an office which consists of only three employees). (Fleshman Aff. ¶¶ 4, 6-7; Jacobsen Aff. ¶ 10; Lewis Aff. ¶¶ 3-4.) Therefore, Drew's allegations may not be taken as true. *See Wolf*, 745 F.2d at 908.

Second, Drew's remaining allegation that Defendants hire individuals around the nation is too vague and ambiguous to demonstrate that Defendants purposefully engaged in "continuous and systematic" contacts directed to West Virginia. *See Base Metal Trading, Ltd. v. OJSC "Novokuznetsky Aluminum Factory,"* 283 F.3d 208, 214-15 (4th Cir. 2002) (holding that plaintiff "simply cannot support jurisdiction in Maryland by making vague, unsubstantiated claims"); *Wright v. First Carolina State Bank*, No. 1:11-00718, 2012 WL 4076509, at *4 n.1 (S.D.W. Va. Sept. 17, 2012) (explaining that plaintiff's assertion that defendant "'regularly operates, conducts and transacts business on a regular basis … in West Virginia' is too vague to establish a prima facie case of jurisdiction," especially in light of defendant's affidavit to the contrary). Of course, the mere fact that Defendants maintain job postings on a website that may be available to an out-of-state resident does not, without more, subject Defendants to nationwide personal jurisdiction. *See CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1075-76 (9th Cir. 2011) ("If the maintenance of an interactive website were sufficient to support general jurisdiction in every forum in which users interacted with the website, 'the eventual demise of all restrictions on the personal jurisdiction of state courts' would be the inevitable result."); *Einmo v. Aecom Gov't Servs., Inc.,* No. 8:06-cv-1371, 2007 WL 2409816, *7 (M.D. Fla. Aug. 21, 2007) (concluding that because Texas company did not strategically utilize online publications to attract employees from Florida, its Internet advertisement did not establish jurisdiction); *Southco,*

*Inc. v. Matdan Am. Corp.*, No. 98-5425, 1998 WL 848056, at *6-7 (E.D. Pa. Dec. 8, 1998) (explaining that "advertising on the Internet is similar to advertising in national publications, and advertising in national publications is not a basis for asserting personal jurisdiction").

Third, the mere fact that Luminant conducted a pre-interview telephone screening with and extended a conditional offer of employment to Drew, a then-West Virginia resident, is not the requisite "continuous and systematic" contact necessary to invoke general jurisdiction. *See, e.g., Wright*, 2012 WL 4076509, at *4 (concluding that "a single sale of stock to one person does not provide the sort of contacts necessary to establish general jurisdiction"); *ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 624 (4th Cir. 1997) (declining to exercise general jurisdiction over defendant with 26 customers in forum state, which made up less than 1% of its nationwide sales).

In sum, Defendants do not have continuous or systematic contacts with the State of West Virginia. Consequently, they are not subject to general jurisdiction in West Virginia.

**2.      This Court also lacks specific personal jurisdiction over Defendants.**

Likewise, Drew cannot establish that this Court possesses specific jurisdiction over either EFH or Luminant. The Fourth Circuit uses a three-part test to determine whether specific jurisdiction applies in a given case. Specifically, a district court is to consider:

> (1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable.

*Consulting Eng'rs*, 561 F.3d at 278. Factors courts may consider in determining "whether a defendant has engaged in such purposeful availment" include:

> (1) whether the defendant maintains offices or agents in the forum state; (2) whether the defendant owns property in the forum state; (3) whether the defendant reached into the forum state to solicit or initiate business; (4) whether the defendant deliberately engaged in significant or long-term business activities in the forum state; (5) whether the parties contractually agreed that the law of the

> forum state would govern disputes; (6) whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship; (7) the nature, quality and extent of the parties' communications about the business being transacted; and (8) whether the performance of contractual duties was to occur within the forum.

*Id.* "Only if a plaintiff satisfies the first prong of the test for specific jurisdiction must a court consider the second and third prongs." *Wright*, 2012 WL 4076509, at *3 (citing *id.*).

Examining these factors, there simply is no basis for this Court to exercise specific jurisdiction over EFH or Luminant. Neither EFH nor Luminant has any office or agent in West Virginia. (Fleshman Aff. ¶ 4.) Neither Defendant owns property in West Virginia. (*Id.*) Neither Defendant initiated contact with Drew; indeed, he initiated contact with Defendants by availing himself of EFH's website. (Jacobsen Aff. ¶¶ 3-6, Exs. A, B.) Neither Defendant has deliberately engaged in any business activities in West Virginia, much less significant or long-term activities. (Fleshman Aff. ¶¶ 4-7.) Neither Defendant made any in-person contact with Drew in West Virginia. Indeed, all in-person contact occurred in Texas, where the position for which Drew applied and interviewed was to be performed. (Fleshman Aff. ¶ 6; Jacobsen Aff. ¶ 10; Lewis Aff. ¶ 4.)

Regarding the nature of the parties' communications, the extent of Luminant's contacts with Drew in West Virginia consisted of two telephone calls to Drew—one to conduct pre-interview screening, and, the other, to offer Drew the position; one FedEx delivery from Luminant to Drew containing Drew's conditional offer of employment and other pre-employment paperwork, including Drew's agreement to relocate; and two subsequent telephone calls and an email from Luminant to Drew advising him that the offer had been rescinded due to his criminal background check. (Am. Compl. ¶¶ 16-19, 25, 28, 32; Jacobsen Aff. ¶ 14; Lewis Aff. ¶ 3.) Of course, each of these contacts occurred only after Drew initiated contact with

Luminant by applying for employment on the EFH website. (Jacobsen Aff. ¶ 5, Ex. B.)

"The quality and nature of these contacts falls woefully short of demonstrating that [either EFH or Luminant] purposefully availed itself of the privilege of doing business in West Virginia to an extent sufficient to justify personal jurisdiction." *Wright*, 2012 WL 4076509, at *5. In *Wright*, for example, this Court concluded that a telephone call, two faxes, an email, and a mailing between the plaintiff (a West Virginia resident) and the defendant (a North Carolina company) for the purpose of securing a contract for the sale of stock was insufficient to warrant personal jurisdiction. *Id.* (noting also that defendant did not have any offices, employees or property in West Virginia; did not solicit or initiate business with plaintiff in West Virginia; and did not make in-person contact with plaintiff in West Virginia).

This Court similarly declined to exercise specific jurisdiction in a case involving even more in-state contact in *Justice Family Farms LLC v. Guess Irrigation Co. LLC*, No. 5:11-cv-00426, 2012 WL 775063, *4 (S.D.W. Va. March 8, 2012). There, the plaintiff argued that this Court should exercise specific jurisdiction over a foreign corporate defendant because the defendant breached a contract with the plaintiff; took part in several phone calls and emails with the plaintiff to negotiate the contract; met with the plaintiff in West Virginia to further contract negotiations; and sent the contract to the plaintiff in West Virginia. But "no services or goods were ever purposefully directed to West Virginia, [m]ost of the negotiations took place outside of the State, and the contracted services were entirely performed" in South Carolina. *Id.* at *5. Thus, this Court dismissed Plaintiff's claims for lack of personal jurisdiction. *Id.* (noting that the contract negotiations were initiated by the plaintiff contacting the defendant—not by the defendant "'reaching into West Virginia' to initiate business contact").

In a feeble attempt to establish jurisdiction, Drew vaguely alleges that the position for

which he applied "had been advertised to reach the Plaintiff in West Virginia." (Am. Compl. ¶ 15.) In reality, however, neither EFH nor Luminant advertises any positions, including the one Drew sought, in West Virginia. (Jacobsen Aff. ¶ 7.) In fact, Drew stated on his application that he learned of the opening from the EFH website, which is maintained from EFH's principal place of business in Dallas, Texas, and is not directed to any particular location. (Jacobsen Aff. ¶ 8, Ex. B.) Regardless, the mere fact that Defendants maintain a website that may be available to an out-of-state resident does not, without more, subject them to personal jurisdiction. *See* discussion, *supra*, at pp. 5-7. Simply stated, none of the factors supports a finding that either EFH or Luminant "purposefully availed itself of the privilege of conducting activities in West Virginia." *Justice Family Farms*, 2012 WL 775063, at *5 (citing *ALS Scan, Inc.*, 293 F.3d at 712-13).

In sum, Drew has not established—and cannot establish—that Defendants have sufficient minimum contacts with West Virginia such that requiring them to defend their interests here would not offend traditional notions of fair play and substantial justice. Therefore, this Court should dismiss Plaintiff's claims for lack of personal jurisdiction.

**B.**   **In the Alternative, the Court Should Transfer This Action to the Northern District of Texas, Dallas Division, Where the Events at Issue Occurred.**

If the Court determines that Defendants are subject to personal jurisdiction in West Virginia, Defendants alternatively request a transfer of venue, pursuant to 28 U.S.C. § 1404(a), to the Northern District of Texas, Dallas Division. Section 1404(a) provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

A decision to transfer venue is left to the sound discretion of the trial court. *S. Ry. Co. v. Madden*, 235 F.2d 198, 201 (4th Cir. 1956). The court's decision to transfer is guided by several

---

factors, including: (i) the ease of access to proof; (ii) the convenience of parties and witnesses; (iii) the cost of obtaining witness attendance; (iv) the availability of compulsory process; (v) the interest in having local controversies decided at home; and (vi) the interests of justice. *Alpha Welding & Fabricating Co. v. Todd Heller, Inc.*, 837 F. Supp. 172, 175 (S.D.W. Va. 1993).

The relative convenience to witnesses is often recognized as the most important factor to be considered in ruling on a motion to transfer under § 1404(a). *See AFA Enters., Inc. v. Am. States Ins. Co.*, 842 F. Supp. 902, 909 (S.D.W. Va. 1994) (noting that convenience is a "critical consideration"); 15 Wright *et al.*, *Federal Practice & Procedure* § 3851 ("Often cited as the most important factor … is the convenience of witnesses."). The material facts of this litigation stem from Drew's attempts to secure employment in Texas. As such, the events giving rise to Drew's claim occurred in Texas—namely, Luminant's evaluation of his application, background check process, and decision to rescind Drew's conditional offer.[2] (Floyd Aff. ¶¶ 4-5; Lewis Aff. ¶¶ 3-4; Jacobsen Aff. ¶¶ 5, 9, 14.) Virtually all of the witnesses with relevant knowledge, and who may be expected to testify at trial, are in Texas. If trial were not held in Texas, key employees of the EFH Defendants would be required to miss work to travel approximately 1,000 miles to West Virginia (where Defendants have no business operations whatsoever). Their absence would disrupt not only their own lives, but also Defendants' business operations. By contrast, Drew is relatively assured of the ability to present himself as a witness in Texas, particularly given his apparent ties to the State. (Jacobsen Aff. Exs. A, B.)

Furthermore, all of the business records and other relevant documents are located in Texas. Therefore, transfer of this case to the Northern District of Texas will not only advance the relative convenience of the parties, but also will ensure the ease of access to proof and the

---

[2] The online database Luminant used to initiate its background check process is also maintained by a Texas company. (Bedell Aff. ¶ 3, Ex. A.)

---

availability of the compulsory process to secure that proof. *See* FED. R. CIV. P. 45(c)(3)(A)(ii).

The public interest would be furthered by transfer of this case to the Northern District of Texas. This is not a case where West Virginia has a strong interest in protecting its citizens from unlawful activities in West Virginia. *Compare Ferrell v. Grange Ins.*, 354 F. Supp. 2d 675, 681-82 (S.D.W. Va. 2005) (noting West Virginia's interest in ensuring its residents are protected from bad faith settlement practices of insurers licensed to do business within the state, as well as out-of-state insurers acting in concert to defraud a resident). The issue here is whether two Texas corporations complied with the FCRA in connection with considering an individual's application for employment in Texas. Thus, Texas has a stronger interest in adjudicating this dispute.

Although Plaintiff's choice of forum is ordinarily accorded considerable weight, that weight is lessened when the conduct giving rise to the complaint did not occur in the forum, as is the case here. *See, e.g., Telepharmacy Solutions, Inc. v. Pickpoint Corp.*, 238 F. Supp. 2d 741,743 (E.D. Va. 2003) (giving less weight to plaintiff's residency and chosen forum because defendant conducted business and developed alleged infringing product in California and only one alleged infringing use occurred in Virginia); *Lynch v. Vanderhoef Builders,* 237 F. Supp. 2d 615, 617 (D. Md. 2002) (giving less weight to plaintiff's residency and chosen forum because the accident at issue, and any negligent acts by defendants, occurred in Pennsylvania). The plaintiff's choice of forum is also given less weight when he brings suit to represent a class. *See Owner-Operator Indep. Drivers Ass'n, Inc. v. North Am. Van Lines, Inc.*, 382 F. Supp. 2d 821, 824-25 (W.D. Va. 2005) (transferring action from Virginia to Indiana because proposed class plaintiffs resided across the country, while defendant's employees and other non-party witnesses resided in Indiana or, at least, closer to Indiana than Virginia) (citing *Koster v. American Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947); *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987)).

**C.**     **In the Further Alternative, Drew Has Failed to State a Claim Under the FCRA and Has Not Alleged Facts Sufficient to Establish a "Willful" Violation of the Act.**

To determine whether a complaint can survive a 12(b)(6) motion, it must be evaluated under the standards set forth in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009). In *Twombly*, the Supreme Court rejected the assertion that a district court may not dismiss a complaint "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 550 U.S. at 577. Instead, the Supreme Court held that a motion to dismiss should be granted if the plaintiff is unable to plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949. Accordingly, to survive a motion to dismiss, a complaint must include more "than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Here, Drew's legal assertion that Defendants relied on a "consumer report" is unsupported by any factual detail and insufficient to plead a claim under the FCRA. Similarly, Plaintiff's unsupported assertion that Defendants' conduct was "willful," does not pass muster under Federal Rule 8(a)(2).

**1.**     **The Amended Complaint fails to state a claim under the FCRA.**

The Amended Complaint vaguely alleges that Defendants "used a 'consumer report,' as defined by the FCRA, to take adverse employment action against Plaintiff." (Am. Compl.  ¶ 48). Beyond this legal conclusion, however, Drew provides no facts that support the conclusion that any of the documents that Defendants allegedly relied upon actually constitute a "consumer report" required to assert a claim under the FCRA.

The FCRA places conditions on the use of consumer reports and requires users of such reports to disclose certain information to the consumer. 15 U.S.C. § 1681b. A "consumer report"

is defined as "any written, oral, or other communication of any information <u>by a consumer</u> <u>reporting agency</u> bearing on a consumer's . . . character, general reputation, personal characteristics, or mode of living which is used or expected to be use . . . for employment purposes." *Id.* at § 1681a(d) (emphasis added). Thus, the requirements for obtaining and using a consumer report only apply when information is obtained from a consumer reporting agency. A "consumer reporting agency" is defined as "any person which, for monetary fees, dues, or on cooperative nonprofit basis, <u>regularly engages ... in the practice of assembling or evaluating</u> <u>consumer credit information for the purpose of furnishing consumer reports to third parties.</u>" *Id.* at § 1681a(f) (emphasis added). The procedural protections in the FCRA do not apply where an employer chooses not to rely on another firm to "assembl[e] or evaluat[e]" but is instead doing its own research, going directly to the source of criminal or other information. *See, e.g.,* Cast, FTC Informal Staff Op. Ltr. (Oct. 17, 1997) (entity that collected consumer information for its own use was not a consumer reporting agency). Here, Drew has not sufficiently alleged that Defendants acted based on any "consumer report" obtained from a "consumer reporting agency."

First, Drew appears to believe that the initial background information obtained from PublicData.com constituted a "consumer report." He alleges that Defendants "used the report from PublicData.com in whole in or in part to make its decision to rescind its offer of employment to Mr. Drew" and refers to "PublicData.com" as a "FCRA governed source[]." (Am. Compl. ¶¶ 23, 30.) However, there simply are no facts from which the Court may infer this critical legal conclusion is true. In other words, the allegations provide no information on who "PublicData.com" is and whether PublicData.com "<u>regularly engages ... in the practice of</u> <u>assembling or evaluating consumer credit information for the purpose of furnishing consumer</u> <u>reports to third parties.</u>" 15 U.S.C. § 1681a(f) (emphasis added).

In fact, an examination of PublicData.com's website and the actual information obtained from PublicData.com suggests the opposite conclusion. According to the website, "PublicData.com is <u>not</u> a consumer reporting agency and data provided by PublicData.com does <u>not</u> constitute a 'consumer report' as that term is defined in the Fair Credit Reporting Act." (Bedell Aff. ¶ 3, Ex. A)[3] The website explains that PublicData.com simply provides access to databases that exist separately and are operated by government agencies: "All databases available at PD are purchased directly or indirectly from government agencies or other such subdivisions under various provisions of Freedom of Information and Public Access Laws." (*Id.*)

Moreover, the information actually obtained from PublicData.com by EFH confirms that all that was provided to EFH was a record from "TX DCJ Parole/Probation Detail"—the Texas Department of Criminal Justice—and, thus, did not involve any "assembling or evaluating," as is required for PublicData.com to be considered a "credit reporting agency." (Bedell Aff. ¶ 4, Ex. B.) In light of the fact that (a) the Amended Complaint does not identify a single fact that would support the legal conclusion that PublicData.com is a "consumer reporting agency," (b) PublicData.com itself states that it is not a "consumer reporting agency," and (c) the alleged "report" confirms that the information provided came from a law enforcement database and thus did not involve "assembling or evaluating," Drew's legal conclusion that Defendants relied on a "consumer report" is insufficient and must fail.

Second, to the extent Drew alleges that the "consumer report" relied upon by Defendants is the Sentencing Order that confirmed Drew's conviction, such document is unquestionably not a consumer report. As alleged in the Amended Complaint, Luminant did not conclusively deny

---

[3] The Court may consider information from the website PublicData.com and the printout that EFH obtained because the documents are "integral and explicitly relied on in the complaint." *See Phillips v. LCI Intl, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999). In the alternative with respect to the information publicly available on the website, it is appropriate for the Court to take judicial notice of that information. *See, e.g.*, Fed. R. Evid. 201; *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

---

Drew employment until it obtained the Sentencing Order. (Am. Compl. ¶ 28.) In fact, it was the Sentencing Order—not the information from PublicData.com—upon which Luminant relied in denying Drew employment. (Jacobsen Aff. ¶ 14.) On its face, the Sentencing Order referred to in the Amended Complaint indicates that it was obtained directly from the Rosebud County Sheriff's Department, Montana (the "Rosebud Sheriff"). (Floyd Aff. Ex. A.)[4] Because the Rosebud Sheriff is not a "consumer reporting agency" under the FCRA, Drew's claim cannot be salvaged by suggesting that the Sentencing Order is the "consumer report" at issue.

Governmental law enforcement agencies that provide criminal background information—such as the Rosebud Sheriff's Office—are not "consumer reporting agencies." For instance, the Federal Bureau of Investigation is not a "consumer reporting agency." *See Olestad v. Kelley*, 573 F.2d 1109, 1111 (9th Cir. 1978) (holding that the FBI is not a "consumer reporting agency" because it does not compile credit information for the purpose of furnishing consumer reports to third parties); *Ricci v. Key Bancshares of Maine, Inc*., 768 F.2d 456, 466 (1st Cir. 1985) (same); *Arnold v. Capital One Servs., Inc.*, Nos. 10-CV-244, 2011 WL 864332, at *4 (E.D. Va. Mar. 10, 2011) (same). Similarly, it is well-recognized by federal courts and the Federal Trade Commission ("FTC")[5] that state or local law enforcement entities do not qualify as "consumer reporting agencies." *See Smith v. Busch Etmt. Corp*., No. 3:08-772, 2009 WL 1608858 (E.D. Va. June 3, 2009) (dismissing FCRA claim because Virginia's Central Criminal Records Exchange was not a "consumer reporting agency"); *Wilder v. Aramark*, 11-00019, Dkt. No. 26 (E.D. Wis. Mar. 30, 2012) (Bedell Aff. ¶ 5, Ex. C) (Wisconsin's Criminal Information Bureau); Copple, FTC Informal Staff Op. Ltr. (June 10, 1998) (Iowa Department of Criminal Investigation);

---

[4] As with the PublicData.com website and information EFH obtained from it, the Court may consider the Sentencing Order since it is a document "integral and explicitly relied on in the complaint." *See Phillips*, 190 F.3d at 618.
[5] The FTC has historically been charged with enforcement of the FCRA. *See* 15 U.S.C. § 1681s(a)(1) (the FTC's has enforcement authority with respect to the FCRA). FTC interpretations are considered. *See, e.g*., *Morris v. Equifax Info. Servs., LLC*, 457 F.3d 460, 470 (5th Cir. 2006); *In re Miller*, 335 B.R. 335, 347 n.7 (Bankr. E.D. Pa. 2005).

Pickett, FTC Informal Staff Op. Ltr. (July 10, 1998) (Arizona Department of Public Safety); Goeke, FTC Informal Staff Op. Ltr. (June 7, 1998) (Missouri Highway Patrol); *see also* FTC, *40 Years of Experience with the Fair Credit Reporting Act* (July 2011) at 8-10 (endorsing prior opinion letters and stating: "The [FTC] has never enforced the FCRA against any DMV or other government agency supplying public records. …[Such an] interpretation would lead to absurd results." Thus, both federal courts and the FTC have recognized that governmental agencies such as the Rosebud Sheriff do not qualify as "consumer reporting agencies" under the FCRA.

As reflected by their webpage, the Rosebud Sheriff Office's mission "is to provide community oriented Law Enforcement designed to protect life and property and maintain order." (Bedell Aff. ¶ 6, Ex. D.) Clearly, the Rosebud Sheriff does not "regularly engage[ ]... in the practice of assembling or evaluating consumer credit information for the purpose of furnishing consumer reports to third parties." 15 U.S.C. § 1681a(f). Because the Rosebud Sherriff supplied the Sentencing Order upon which Luminant relied in making its determination not to hire Drew, neither Luminant nor EFH had any obligation to comply with the requirements of the FCRA.

Therefore, whether relying upon the information from PublicData.com or the Sentencing Order from the Rosebud Sheriff, Drew has failed to state a claim under the FCRA, and the Amended Complaint must be dismissed under Rule 12(b)(6).

## 2.    The Amended Complaint fails to state a claim for "willful" violation of FCRA.

The Amended Complaint also should be dismissed to the extent it seeks to state a claim for a purported "willful" violation of the FCRA. Drew alleges generally that "Defendants have willfully violated" and "acted in deliberate or reckless disregard of their obligations under FCRA." (Am. Compl. ¶¶ 2, 52.) Beyond those conclusions, which are by themselves clearly insufficient under Rule 8, the Amended Complaint provides no factual allegations supporting the

claim that Defendants had the requisite intent. Such vague, undefined allegations do not demonstrate that Defendants acted intentionally or with the "reckless disregard" required by the Supreme Court's decision in *Safeco Ins. Co. v. Burr*, 551 U.S. 47 (2007).

The FCRA provides two avenues to recovery: "willful" violations permit recovery of statutory and punitive damages, and "negligent" violations permit recovery of actual damages. *See* 15 U.S.C. §§ 1681n, 1681o. The Supreme Court addressed the distinction and held that in order for a violation to be "willful" under FCRA, it must be intentional or involve "reckless disregard" for the provisions of FCRA. *Safeco*, 551 U.S. at 57-58. The Court instructed that Congress intended the "willful" element to encompass the common law understanding of reckless conduct: "action entailing 'an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Id.* at 68-69. Drew's allegations do not allege a "willful" violation.

The Amended Complaint alleges that Defendants "willfully violated" the requirements of FCRA and that "[t]he foregoing violations are willful [because] ... Defendants acted in deliberate or reckless disregard of their obligations." (Am. Compl. ¶¶ 2, 52.) But these assertions are completely insufficient under Rule 8, which requires that plaintiffs include "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. As the Supreme Court elaborated in *Iqbal*: "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." 129 S. Ct. at 1949.

Drew makes the circular argument that Defendants were willful because their actions were "counter to longstanding regulatory guidance" and that this somehow provided Defendants

with "substantial notice that their failures violated the FCRA." (Am. Compl. ¶¶ 39-40.) Drew also appears to contend that Defendants' knowledge can similarly be inferred because there is case law from various courts regarding the requirements of the FCRA. (*Id.* ¶ 40.) Of course, these vague claims do not demonstrate that <u>Defendants</u> in particular acted intentionally or with reckless disregard concerning Drew and are completely insufficient under *Safeco* and Rule 8. Indeed, there are no specific facts alleged in the Amended Complaint that could possibly support that conclusion.

Courts have routinely dismissed FCRA "willful" claims for failure to provide substantiating facts to support the claim that a defendant acted intentionally or with reckless disregard for the law. *See, e.g.*, *Zaun v. J.S.H. Inc. of Faribault*, No. 10-2190, 2010 WL 3862860, at *3 (D. Minn. Sept. 28, 2010); *Gardner v. Appleton Baseball Club, Inc*. No. 09-705, 2010 WL 1368663, at *4-5 (E.D. Wis. Mar. 31, 2010); *Rosenthal v. Longchamp Coral Gables, LLC*, 603 F. Supp. 2d 1359, 1362 (S.D. Fla. 2009). In particular, courts have rejected attempts to plead "willful" violations based on claims about the general availability of information regarding FCRA requirements. *See, e.g.*, *Seo v. CC CJV Am. Holdings, Inc.*, No. 11-05-31, 2011 WL 4946507, at *2 (C.D. Cal. Oct. 18, 2011) (fact that information about FACTA was available to defendant did not support plaintiff's assertion that defendant knowingly ignored FACTA's provisions); *Zaun*, 2010 WL 3862860, at *3 ("[Plaintiff] recites the background of [the statute] and the attendant publicity, but he does not tie any of those background allegations to Defendant's conduct in this case. Instead, he asks the Court to infer from his counsel's experience with other companies that Defendant here may likewise have been reckless or willful in violating FCRA's requirements."); *Huggins v. Spaclinic, LLC*, No. 09-2677, 2010 WL 963924, at *2 (N.D. Ill. Mar. 11, 2010) ("Plaintiff alleges that FACTA's requirements were well-

publicized and that credit card companies required compliance with the statute, but these allegations are not specific to the defendant."); *Rosenthal*, 603 F. Supp. 2d at 1362 (noting that a "willful" violation cannot be alleged "by the mere fact that FACTA's requirements were well-publicized in the media and contained in Defendant's credit card agreements.").

Likewise here, Drew's general (and unsupported) claims that information regarding FCRA's requirements is generally available do not support the conclusion that Defendants' alleged actions concerning Drew were either intentional or conducted with "reckless disregard." The Amended Complaint otherwise fails to provide any basis to conclude that Defendants acted with intent or reckless disregard of FCRA. Thus, Drew has failed to state any claim for a "willful" violation of FCRA.

## IV.  CONCLUSION

WHEREFORE, Defendants Energy Future Holdings Corp. and Luminant Mining Company, LLC pray that this Court dismiss Plaintiff's Complaint for lack of personal jurisdiction or, in the alternative, transfer this action to the Northern District of Texas, Dallas Division, or in the further alternative, dismiss Plaintiff's Complaint for failure to state a claim.

Respectfully submitted,

*/s/ Ann Marie Painter*

| | | |
|---|---|---|
| Erin Elizabeth Magee | Ann Marie Painter | Gregory T. Parks |
| (WVBN #6078) | (*pro hac vice*) | (*pro hac vice*) |
| Jackson Kelly PLLC | Elizabeth M. Bedell | Ezra Dodd Church |
| 500 Lee Street East | (*pro hac vice*) | (*pro hac vice*) |
| P.O. Box 553 | Morgan, Lewis & Bockius LLP | Morgan, Lewis & Bockius |
| Charleston, WV 25322 | 1717 Main Street, Suite 3200 | 1701 Market Street |
| (304) 340-1000 Telephone | Dallas, Texas 75201 | Philadelphia, PA |
| (304) 340-1051 Fax | (214) 466-4000 Telephone | (215) 963-5000 Tel |
| emagee@jacksonkellypllc.com | (214) 466-4001 Fax | (215) 963-5001 Fax |
| | annmarie.painter@morganlewis.com | gparks@morganlewis.com |
| | beth.bedell@morganlewis.com | echurch@morganlewis.com |

*Counsel for Defendants, Energy Future Holdings Corp. and Luminant Mining Company, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on March 15, 2013, I presented the foregoing document to the Clerk of Courts for filing and uploading to the CM/ECF system, which will send notification to the following CM/ECF participants:

John W. Barrett
Jonathan R. Marshall
BAILEY & GLASSER LLP
209 Capitol Street
Charleston, West Virginia 25301

Kristi Cahoon Kelly
Surovell Isaacs Petersen & Levy PLC
4010 University Drive, 2nd Floor
Fairfax, Virginia 22030

*/s/ Ann Marie Painter*
Counsel for Defendants

DB1/ 73517324.1